IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 3:18-cv-01450-SB <br><br> **OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Kelly B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.  PLAINTIFF'S APPLICATIONS**

Plaintiff was born in September 1966, making her fifty years old on October 6, 2016, the alleged disability onset date. (Tr. 24, 143-44, 172.) Plaintiff is a high school graduate and has completed one year of college. (Tr. 24, 356.) Plaintiff has past relevant work experience as a credit union teller, cashier-checker, cashier supervisor, fast food worker, and delicatessen counter worker. (Tr. 104-05, 107, 110.) In her applications for Social Security benefits, Plaintiff

alleges disability due to depression, posttraumatic stress disorder ("PTSD"), and back pain. (Tr. 143-44, 172.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on July 21, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on March 20, 2018. (Tr. 83-118.) On April 11, 2018, the ALJ issued a written decision denying Plaintiff's applications for benefits. (Tr. 13-26.) Plaintiff now seeks judicial review of that decision.

## II.  THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-26.) At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from July 1, 2017, through September 30, 2017, but had not engaged in substantial gainful activity since October 1, 2017 (about one year after the alleged disability onset date of October 6, 2016). (Tr. 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[L]umbar degenerative disc disease; depression disorder; and anxiety disorder." (Tr. 16.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 17.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff cannot climb ladders, ropes, or scaffolds; (2) Plaintiff can occasionally stoop, kneel, crouch, and crawl; (3) Plaintiff can perform work involving simple, routine tasks; (4) Plaintiff cannot have contact with the general public; and (5) Plaintiff can have occasional contact with co-workers. (Tr. 19-20.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 24.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a photocopy machine operator, production assembler, and mail sorter. (Tr. 25.)

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (2) failing to provide legally sufficient reasons for discounting the opinions of Plaintiff's examining occupational therapist, Trevor Tash ("Tash"), and treating nurse practitioner, Tiffany McClean ("McClean"). As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

**I.     PLAINTIFF'S SYMPTOM TESTIMONY**

**A.     Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and

PAGE 5 – OPINION AND ORDER

testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B. Analysis

In this case, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, reflecting that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ met that standard here.

First, the ALJ found Plaintiff's claim of totally debilitating impairments inconsistent with, among other things, Plaintiff's ability to work at a restaurant where she cooks food on the grill, washes dishes, cleans, washes tables, makes milkshakes, and manages the cash register.[2] (*See* Tr. 21-22, discounting Plaintiff's symptom testimony, emphasizing that Plaintiff is "currently working [part-time] at Five Guys Restaurant" despite her claim of disability, and noting that Plaintiff "report[ed] working and performing a wide variety of activities with her impairments," such as preparing meals, going on walks, and occasionally attending Narcotics

---

[2] At the time of the hearing, Plaintiff had worked for nearly one year at Five Guys restaurant, and during four of those months, Plaintiff worked full-time. (*See* Tr. 16, 85-86.) Plaintiff testified that she reduced her hours to part-time work because she was having problems with standing in one place, hand and ankle swelling, leg pain, tight neck muscles, and sciatica. (Tr. 86-87; *see also* Tr. 1105, noting that Plaintiff reported that she was "working close to fulltime hours" about one year after her alleged onset date but was "feeling upset and less willing to continue at the job" because she had "an interpersonal incident at work"; Tr. 1112, reflecting that Plaintiff "advocated for herself in getting reduced hours at work" about one month later).

PAGE 6 – OPINION AND ORDER

Anonymous meetings, and observing that Plaintiff's "job duties involve cooking food on the grill, washing dishes, clean up, washing tables, making milk shakes, and managing the cash register").

It was appropriate for the ALJ to discount Plaintiff's symptom testimony based on Plaintiff's reported activities, such as the work she performed at Five Guys restaurant. *See Carter v. Astrue*, 472 F. App'x 550, 552 (9th Cir. 2012) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the ALJ "concluded that [the claimant's] credibility was undermined by the fact that he worked part-time for nearly another year after his alleged disability onset date"); *Richardson v. Comm'r of Soc. Sec.*, 588 F. App'x 531, 533 (9th Cir. 2014) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the claimant's "ability to work part-time after applying for benefits" supported the ALJ's decision to discount the claimant's testimony); *see also Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 945 (9th Cir. 2017) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the claimant's "typical daily activities were inconsistent with her symptom testimony—particularly given that she already worked part-time and regularly handled money at home by paying bills, managing a savings account, counting change, and using a checkbook").

Plaintiff argues that the ALJ's reliance on her activities was misplaced because her activities are "not evidence that she can sustain full-time competitive employment" and fail to support the conclusion that she can "sustain an activity for eight hours a day, five days per week." (Pl.'s Reply Br. at 2-3.) The Court is not persuaded by Plaintiff's argument. "For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities 'contradict claims of a totally

debilitating impairment.'" *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1211-12 (D. Or. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)). Furthermore, the *Carter*, *Richardson*, and *Presley-Carrillo* decisions suggest that it was reasonable for the ALJ to discount Plaintiff's symptom testimony based on her reported work activity. Accordingly, the Court concludes that the ALJ did not err in discounting Plaintiff's testimony based on, among other things, her work activity. *See Carter*, 472 F. App'x at 552 ("[T]he ALJ concluded that [the claimant's symptom testimony] was undermined by the fact that he worked part-time for nearly another year after his alleged disability onset date of March 22, 2005. . . . Here, the fact that [the claimant] continued working past his alleged onset date forms a valid basis for [discounting] his [testimony]."); *Martin v. Colvin*, No. 12-2306-PK, 2014 WL 2772551, at *13 (D. Or. June 18, 2014) ("Performance of job duties on a part-time basis, while not sufficient to establish capacity to work full time, can constitute a legitimate reason for discounting a claimant's assertion of disability.").

Second, the ALJ discounted Plaintiff's testimony on the ground that it was not consistent with her performance on physical examinations. (*See* Tr. 21, reflecting that the ALJ stated that the medical record did not support the severity of Plaintiff's alleged physical limitations and cited examinations showing that Plaintiff had "normal muscle/motor strength"). This is a clear and convincing reason for discounting a claimant's testimony. *See Centanni v. Berryhill*, 729 F. App'x 560, 562 (9th Cir. 2018) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony and stating that the "ALJ properly rejected" the claimant's testimony "based on inconsistency with the objective medical evidence showing largely unremarkable physical examinations") (citation omitted); *Loewen v. Berryhill*, 707 F. App'x 907, 908 (9th Cir. 2017) (holding that the ALJ satisfied the clear and convincing reasons

standard and noting that the claimant's testimony was not consistent with her performance on examinations).

Plaintiff argues that the ALJ's reliance on her examinations was misplaced because the ALJ (1) failed to explain how her examinations undermine her testimony,[3] and (2) noted that her imaging revealed a "L4-5 disc hole on the left impinging on the nerve root and foramen," which support Plaintiff's testimony. (Tr. 21; Pl.'s Opening Br. at 8.) Plaintiff also argues that the ALJ relied on treatment notes that are "uncharacteristic of the overall record," and cites evidence that she contends supports her testimony about the severity of her physical impairments. (Pl.'s Reply Br. at 3-4.)

It is well settled that the Court must uphold an ALJ's interpretation of the medical record if it is rational and supported by substantial evidence in the record. *See Pilcher v. Berryhill*, No. 3:16-cv-617-SI, 2017 WL 3433686, at *8 (D. Or. Aug. 10, 2017) ("Despite [plaintiff's] alternative interpretations of the medical record, the Court must uphold the ALJ's interpretation because it is rational and supported by substantial evidence."). That is true even where, as here, the claimant provides an alternative, rational interpretation of the record. *See Childers v. Colvin*, No. 6:13-cv-01922-SI, 2015 WL 464333, at *8 (D. Or. Feb. 4, 2015) ("While [plaintiff] provides an alternative, rational interpretation of the objective medical findings, the Commissioner's reasonable conclusion must be upheld." (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))).

---

[3] In the Court's view, if the record includes normal or unremarkable examinations, as the ALJ noted in discounting Plaintiff's testimony, it logically follows that such examinations are inconsistent with a claim of complete disability. Thus, the ALJ did not need to elaborate upon why Plaintiff's unremarkable examinations were inconsistent with her testimony. *See generally Wilcox ex. rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *7 (D. Or. Nov. 24, 2014) (explaining that a court "may draw reasonable inferences from the ALJ's decision 'if those inferences are there to be drawn'" (quoting *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989))).

The ALJ's interpretation of the record here was rational and supported by substantial evidence (i.e., more than a mere scintilla but less than a preponderance).[4] (*See* Tr. 1015, noting on May 5, 2017, that Plaintiff's lumbar motion was "within normal limits with no pain," all "orthopedic tests [were] within normal limits with no pain," and "[a]ll lower extremity muscle testing was within normal limits with no pain and equal bilateral[ly]"; Tr. 760, 763, 769-70, making the same observations on March 29, 2016, April 29, 2016, July 25, 2016, and September 20, 2016; Tr. 1047-48, reflecting that on August 8, 2017, Plaintiff exhibited full and intact strength "throughout [her] upper and lower extremities" on physical examination and that Plaintiff's gait, arm swinging, turning, heel walking, toe walking, and tandem gait were all within normal limits; Tr. 1011, noting on May 15, 2017, that Plaintiff's pain and tightness had decreased and was "on average . . . a 3/10," Plaintiff's "most pain and tightness continues with walking more than 30 minutes," Plaintiff denied "any numbness, tingling or weakness into arms or legs," and Plaintiff "show[ed] progress with a decrease in average pain and tightness"; Tr. 863, reflecting that on April 12, 2017, Plaintiff exhibited "5/5 strength [in] her hip flexors, quads, hamstrings, anterior tibialis, peroneals, gastrocs, and EHLs"; Tr. 666-67, observing on December 21, 2016, that Plaintiff's lower extremity exam was largely unremarkable and Plaintiff's straight leg raise tests were negative; Tr. 663-64, noting on November 30, 2016, that Plaintiff's straight

---

[4] These record citations include those that the ALJ cited in his written decision, as well as others that support the ALJ's position. *See generally Fenton v. Colvin*, No. 6:14-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) ("[T]he Court is permitted to consider additional support for a ground on which the ALJ relied." (citing *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006))); *Warre*, 439 F.3d at 1005 n.3 ("Although the ALJ did not cite the [Programs Operations Manual System ('POMS')], the medical expert who testified at the hearing did, and the ALJ clearly credited the expert's and the Commissioner's interpretation of the Listing. The Commissioner is not asking this court to invent a new ground of decision; rather, the POMS simply is additional support for the Commissioner's and the ALJ's position.").

leg raise test on the left was positive but her motor exam was largely unremarkable and she showed no "obvious muscle weakness").[5]

The ALJ also discounted Plaintiff's testimony on the ground that her mental health records did not "show critical or marked problems" and revealed "few objective findings indicative of significant functional restrictions." (Tr. 21.) The ALJ's interpretation of the record was rational and supported by substantial evidence. (*See* Tr. 1084, noting on May 10, 2017, that Plaintiff "reported significant improvement in mood after receiving a job at a restaurant and hearing from her son"; Tr. 1088-89, observing on May 22, 2017, that Plaintiff "said that overall since starting Lithium she is feeling happy, more motivated, and more hopeful about her future," and reported "doing well" and "being more active";[6] Tr. 1095, documenting Plaintiff's report that "her job is going well in that she is quickly becoming an asset and learning her responsibilities"; Tr. 752, indicating that on November 14, 2016, McClean stated that Plaintiff exhibited "[n]o noted functional impairments in [the] areas of cognition, memory, or thought process," that Plaintiff's "[a]ctive symptoms of primary diagnosis are in remission with medication and treatment," and that Plaintiff's "presenting concerns seem situational and are spontaneously resolving"; Tr. 750, 754, 758, making the same observations on September 22, 2016, October 17, 2016, and March 13, 2017; Tr. 879, making the same observation on April 10, 2017, and adding that "Lithium has helped significantly"; Tr. 1079, reflecting that on May 26,

---

[5] The Court also notes that Plaintiff told her physician that she was not interested in physical therapy. (*See* Tr. 1034, observing on October 6, 2017, that Plaintiff was "not interested [in] physical therapy"; Tr. 756, noting on October 10, 2016, that Plaintiff "decline[d] physical therapy").

[6] Also on May 22, 2017, Plaintiff reported that McClean had referred her to the emergency room after Plaintiff commented on "how easy it would be for someone to 'kill themselves on the train track.'" (Tr. 1089.) Plaintiff, however, claimed that McClean had "an 'extreme reaction' to what she had shared" and that she "had no intent to [ever] hurt herself." (Tr. 1089.)

2017, McClean observed that Plaintiff was "feeling better" and that Plaintiff's "[a]ctive symptoms of primary diagnosis are being addressed with medication and treatment and will be continuously monitored"; Tr. 958, noting on April 19, 2017, that Plaintiff informed her mental health provider that "'since starting the Lithium, the cloud has lifted'"; Tr. 854, observing on March 28, 2017, that Plaintiff "reported that since starting Lithium her depressive symptoms have improved [and] it's easier to get out of bed, she is enjoying socializing, and her mood is slightly elevated").

Furthermore, in discounting Plaintiff's testimony, the ALJ observed that "situational stressors" (i.e., Plaintiff's relationship with her son, housing, and lack of income) "aggravate[d]" Plaintiff's "mental symptoms." (Tr. 21.) McClean, the nurse practitioner whose opinion Plaintiff relies on in this appeal, repeatedly made the same observation. (*See* Tr. 750, 752, 754, 758, 764.) It was reasonable for the ALJ to find that Plaintiff's symptoms were situational. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (holding that the ALJ satisfied the clear and convincing reasons standard and recognizing that "the record support[ed] the ALJ's conclusion that [the plaintiff's] mental health symptoms were situational"); *Angela Y. v. Comm'r Soc. Sec. Admin.*, No. 3:17-cv-01954-HZ, 2019 WL 281291, at *6 (D. Or. Jan. 21, 2019) (holding that the ALJ satisfied the clear and convincing reasons standard, citing the *Chesler* decision, and concluding that it was "it was reasonable for the ALJ to find that Plaintiff's symptoms were situational").

For these reasons, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[T]he ALJ's interpretation of [the claimant's] testimony may not be the only reasonable one. But it is still a reasonable

interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").

## II.    MEDICAL SOURCE OPINIONS

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinions of her treating nurse practitioner, McClean, and examining occupational therapist, Tash. Nurse practitioners and occupational therapists are considered "other sources," *see Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (addressing nurse practitioners); *Hatfield v. Berryhill*, 768 F. App'x 629, 631 n.2 (9th Cir. 2019) (addressing occupational therapists), and are therefore not entitled to the same deference as "acceptable medical sources." *Molina*, 674 F.3d at 1111. "An ALJ may discount the opinion of an 'other source,' . . . if [he] provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citation omitted).

### A.    McClean's Opinion

McClean filled out a mental residual functional capacity assessment on June 15, 2017. (Tr. 1068-70.) McClean stated that Plaintiff suffers from bipolar disorder II and PTSD. (Tr. 1068.) Additionally, McClean opined that Plaintiff suffers from, among other things, "marked" limitations (i.e., the claimant's ability to "function independently, appropriately, effectively, and on a sustained basis is *seriously limited*, and (s)he is distracted from activity no more than 10-19% of the time") in her ability to: (1) respond to requests, suggestions, criticisms, correction, and challenges from supervisors; (2) keep social interactions free of excessive irritability, sensitivity, argumentativeness, suspiciousness, or other inappropriate behavior; (3) work a full day and complete a full week without needing more than the allotted number or length of rest periods during the day; and (4) manage her psychologically based symptoms. (Tr. 1068-70.)

PAGE 13 – OPINION AND ORDER

The ALJ assigned only "some weight" to McClean's medical source opinion. (Tr. 23.) The ALJ provided four reasons for discounting McClean's opinion: (1) the medical record reveals that McClean "has only met with [Plaintiff] during six office visits, each less than 30-minutes long," (2) "the record contains little support that [Plaintiff's] mental impairments have worsened since her prior disability decision," (3) the "severity" of McClean's "opinions that [Plaintiff] has marked limitations in some areas and needs to take unscheduled work breaks are inconsistent with [her] work activity at Five Guys Restaurant," and (4) "the medical record as a whole does not support the severity of [McClean's] marked opinions regarding [Plaintiff]." (Tr. 23.)

The Court finds that the ALJ provided germane reasons for discounting McClean's opinion. First, it was reasonable for the ALJ to discount McClean's opinion that Plaintiff suffers from marked limitations and needs to take unscheduled work breaks on the ground that it is inconsistent with Plaintiff's work activity (i.e., after the alleged onset date, Plaintiff worked full-time for four months and at least part-time for nearly a year and testified that she cooks food on the grill, washes dishes, cleans, washes tables, makes milkshakes, and manages the cash register).[7] Indeed, in *Claussen v. Berryhill*, No. 6:17-cv-00258-AA, 2018 WL 2222718, at *2 (D. Or. May 15, 2018), the claimant alleged a disability onset date of September 16, 2011. *Id.* The claimant testified that she "obtained a part-time job as a cashier at a liquor store between November 2012 and July 2013," and that she "quit th[e] job because her hands were becoming numb, her pain level interfered with her ability to interact appropriately with customers, and she

---

[7] Plaintiff argues that her work activity is consistent with McClean's opinion because she testified that she "missed several days of work because of her mental health impairments." (Pl.'s Opening Br. at 15.) Plaintiff testified that she only missed work "[o]nce every . . . maybe two months." (Tr. 93.) This testimony fails to suggest that Plaintiff's work activity is consistent with McClean's opinion. (*Cf.* Tr. 1070, opining that Plaintiff would like miss one day of work per month).

PAGE 14 – OPINION AND ORDER

frequently had to call out sick due to pain and doctor's appointments." *Id.* at *3. The court held that the ALJ provided specific and legitimate reasons for discounting the claimant's treating physician's opinion. *Id.* at *6. In support of its holding, the court noted that the "ALJ reasonably found" that the physician's opinion was inconsistent with "the part-time work [the] plaintiff was able to do for the better part of a year" after the alleged onset date. *Id.* As in *Claussen*, the ALJ did not err in discounting McClean's opinion based on Plaintiff's work activity. *See Hudson v. Astrue*, No. 6:11-6400-SI, 2013 WL 1100998, at *4 (D. Or. Mar. 15, 2013) ("Even though Ms. Hudson's [part-time] work activity does not rise to the level of 'substantial, gainful activity,' it contradicts Dr. Law's statement that Ms. Hudson was completely unable to work.").

The ALJ also discounted McClean's "marked opinions" on the ground that they were inconsistent with "the medical record as a whole." (Tr. 23.) Plaintiff argues that the ALJ erred because his reference to the "record as a whole" was "conclusory and insufficient." (Pl.'s Opening Br. at 15.) In *Skelton v. Comm'r of Soc. Sec.*, No. 06:13-cv-01117-HZ, 2014 WL 4162536, at *9 (D. Or. Aug. 18, 2014), the ALJ rejected the claimant's treating physician's opinion and "stated, without citation, that [the physician's] opinion was inconsistent with the substantial evidence of record." *Id.* The court held that the ALJ did not err in concluding that the physician's opinion was inconsistent with the "substantial evidence in the record." *Id.* In support of its holding, the court noted that before discounting the physician's opinion, the ALJ "spent several pages discussing the medical evidence in some detail and he was not required to repeat it." *Id.*

The Court agrees that an ALJ is not required to repeat his discussion and interpretation of the medical evidence throughout his opinion. Once an ALJ discusses and analyzes the medical evidence, the Court can reasonably discern the ALJ's path when he later makes a reference to

inconsistent medical evidence. *See Sardina v. Colvin*, No. 15-00167, 2016 WL 737940, at *3 (D. Ariz. Feb. 25, 2016) ("Earlier in her decision, the ALJ extensively discussed the medical records. Although the ALJ did not repeat her analysis of the medical records when discussing the treating providers' opinions, the Court will not 'fault the [ALJ] merely for explaining [his] decision with less than ideal clarity,' so long as [his] 'path may reasonably be discerned.' Moreover, although the Court cannot make independent findings when reviewing an ALJ's non-disability decision, it still must review the record as a whole to determine whether the ALJ's findings are supported by substantial evidence. Here, substantial evidence supports the ALJ's finding that the treatment providers' opinions are unsupported by the record as a whole.") (internal citations and ellipses omitted).

Here, the Court can reasonably discern the ALJ's path. Indeed, in discounting Plaintiff's symptom testimony, the ALJ cited mental health records discussed in Part I.B. It is reasonable to infer that the ALJ was referencing this evidence (and similar record evidence) when he stated that McClean's opinion was inconsistent with the medical record as a whole. Substantial evidence supports the ALJ's decision to discount McClean's opinion on this ground. (*See* Tr. 750, 752, 754, 758, 764, reflecting that McClean repeatedly stated that Plaintiff exhibited "[n]o noted functional impairments in [the] areas of cognition, memory, or thought process," that Plaintiff's "[a]ctive symptoms of primary diagnosis are in remission with medication and treatment," and that Plaintiff's mental health concerns "seem situational and are spontaneously resolving").

In sum, the Court concludes that the ALJ did not err in discounting McClean's opinion. *See Delegans v. Berryhill*, 766 F. App'x 477, 480 (9th Cir. 2019) ("Because the ALJ gave a germane reason for rejecting [the 'other source'] testimony, the ALJ properly rejected it.");

*Adams v. Berryhill*, 725 F. App'x 541, 542 (9th Cir. 2018) (holding that the ALJ did not err in discounting an "other source" opinion because the ALJ provided one germane reason for doing so).

### B. Tash's Opinion

Tash, an occupational therapist, examined Plaintiff on February 27, 2018, and filled out a physical capacity evaluation. (Tr. 1147-51.) Tash noted that Plaintiff exhibited full/normal strength in her upper and lower extremities on examination. (Tr. 1148.) Relying on Plaintiff's reports and his own observations, Tash estimated that Plaintiff can sit for three hours during an eight-hour workday, stand for one hour during an eight-hour workday, and walk for six hours during an eight-hour workday. (Tr. 1148.) Tash also stated that Plaintiff can balance without limitation, frequently reach forward, and occasionally stoop, kneel, squat, crawl, reach overhead, twist, and climb ladders. (Tr. 1149.) Tash added that Plaintiff is "capable for part-time work" due to her "limitations in being able to work back to back full days," and that the "brevity" of his evaluation "prohibited prolonged testing of [Plaintiff's] postural endurance (sit/stand/walk)." (Tr. 1150.)

The ALJ assigned only "some weight" to Tash's opinion. (Tr. 22.) The ALJ provided four reasons for discounting Tash's opinion: (1) Tash did "not point to any evidence that [Plaintiff's] impairments have worsened since her prior disability decision," (2) Tash's opinion that Plaintiff needs to be "limited to part-time work appears to be based primarily on [Plaintiff's] subjective complaints rather than on objective medical evidence," and it is inconsistent with Plaintiff's "full-time work at Five Guys for four months," (3) Tash's opinion that "'due to [Plaintiff's] limitations in being able to work back to back full days' is vague, does not contain specific vocational limitations, and is inconsistent with his examination findings," and (4) Tash's opinion that Plaintiff is "capable of part-time work in the light-medium range of physical

PAGE 17 – OPINION AND ORDER

demand supports a finding [that Plaintiff] is capable of full-time light exertional work." (Tr. 22-23.)

Plaintiff argues that the ALJ erred in discounting Tash's opinion based on his reliance on Plaintiff's self-reports because the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony. (Pl.'s Opening Br. at 12.) As discussed above, the Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. Thus, it was reasonable for the ALJ to discount Tash's opinion on this ground. *See Smith v. Berryhill*, 742 F. App'x 253, 255 (9th Cir. 2018) (holding that the ALJ provided germane reasons for discounting an "other source" opinion and noting that the other source "relied too heavily" on the claimant's reports); *Novak v. Astrue*, No. 6:11-cv-06317-PK, 2013 WL 395481, at *4 (D. Or. Jan. 29, 2013) ("As the ALJ properly found Ms. Novak's subjective symptom testimony not credible, . . . [reliance on self-reports] is a germane reason for according Ms. Thorn's opinion little weight.").

Indeed, Tash's principal finding is that Plaintiff is only capable of part-time work due to her "limitations in being able to work back to back full days." (Tr. 1150.) This finding is based on Plaintiff's report, not objective evidence. (*See* Tr. 1148, "Work status is: Currently part-time. [Plaintiff] stated that she is not able to tolerate working on a full time (day after day) basis due to her pain increasing to the point of not being able to function"; *see also* Tr. 91-92, reflecting that Plaintiff's attorney told the ALJ that Tash's opinion about Plaintiff's inability to work "back-to-back full days" was "[p]robably due to . . . her report to [Tash] . . . that she could work some days but not back to back," and the ALJ pointed to Tr. 1148/Ex. 22F at 2 as showing that it was based on Plaintiff's report; *cf.* Tr. 93, noting that Plaintiff testified that she has only missed work

"[o]nce every . . . maybe two months," even though she worked full-time during four of those months).

In sum, the ALJ did not err in discounting Tash's opinion. *See Delegans*, 766 F. App'x at 480 ("Because the ALJ gave a germane reason for rejecting [the 'other source'] testimony, the ALJ properly rejected it."); *Adams*, 725 F. App'x at 542 (stating that "[a]n ALJ may reject an 'other source' opinion if he provides a 'germane' reason for doing so," and holding that the ALJ did not err in discounting the "other source" opinion because the ALJ provided one germane reason).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 1st day of November, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge